UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LYDELL HILL, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-509-JD-SJF |
| WARDEN, et al., | |
| Defendants. | |

OPINION AND ORDER

Lydell Hill, a prisoner without a lawyer, filed an amended complaint against fourteen defendants based on events he alleges occurred at the Westville Correctional Facility. ECF 8. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In this case, Hill filed a 27-page amended complaint containing allegations that are in the realm of "fantastic" or "delusional." ECF 8. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). He alleges that, in late 2021, an inmate housed at Westville, and members of his family began to plot against him to kill him or keep him in prison. *Id.* at 1, 22. To this end, Hill

asserts the inmate put a device in the computer speakers in his cell that recorded his activities and allowed him to eavesdrop on Hill, scan Hill's mind, and create statements using Hill's voice. *Id*. at 9, 14, 22, 26. Hill states the device was like a "mind reading machine" because all he had to do was listen to the speakers in his cell and statements using his voice were automatically created by the device. *Id*. at 15, 22. The inmate used the device to watch Hill in his cell, stalk Hill's family, and send the prosecutor's office false information about Hill. *Id*. at 22, 24. The inmate also used the device to persuade Hill's family to commit bad acts, spread rumors about Hill being a confidential informant, and create statements where Hill admitted his guilt. *Id*. at 2, 8, 9.

Hill contends the inmate had access to information about his family members and told stories about them using his voice. *Id*. at 9, 24. Hill would also hear the voices of his first love, cousin, brother, ex-fiancé, and mother through his computer speakers. *Id*. at 14. The voices told him to do certain things and made statements about him. *Id*. When he heard the voices, he would speak out loud to the speakers saying that the statements were false. *Id*. In one instance, where the speakers played throughout the prison, he could hear his mother "crying with someone telling her to eat some dog food or to send some money." *Id*. at 15. At times, he would look into his computer speakers and be connected with his ex-fiancé. *Id*. at 14. Hill asserts that after several months of hearing the voices, the inmate's voice "appeared in [his] speaker box" and told him the "joke [was] on [him]" because he was creating statements with Hill's voice, but using his thoughts to have his sentence modification denied. *Id*. at 15. He reported hearing voices to custody officers, who told him the speakers in his cell did not work. *Id*. at 14.

2

In November or December 2021, Officer Doughby began working at Westville as a correctional officer. ECF 8 at 4. Hill asserts that Officer Doughby was in close contact with the inmate before she began working at Westville and the inmate persuaded her to become a correctional officer. *Id*. at 22, 24. He states Officer Doughby was engaged to the inmate, activated the recording device in his computer speakers, stalked his family, trafficked drugs, and visited him in his dorm to keep track of him. *Id*. at 4, 11, 12. Hill states that the inmate and Officer Doughby started a rumor about him talking to a detective about other offenders. *Id*. at 11. Shortly thereafter, in late 2021, Hill alleges he was assaulted by offenders with knives in their hands, who told him Officer Doughby started a rumor about him knowing a detective. *Id*.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). To state a claim for failure to protect, a plaintiff must establish the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted). "[I]t's common knowledge that snitches face unique risks in prison . . .." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). Prison officials may be found liable where it can be proven they knew an inmate "faced a significant risk of harm from a 'particular vulnerability' and exposed him to that risk anyway." *Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) (quoting *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005)). Here, further development may show that Hill's belief is part of his delusional thinking, but at this stage of the case, the court

3

will allow Hill to proceed against Officer Doughby on an Eighth Amendment failure to protect claim for starting a rumor about Hill talking to a detective about other offenders that caused him to be assaulted in late 2021.

Following the 2021 assault, Hill was moved to a protective custody dorm where the inmate was also housed. ECF 8 at 11. After Hill was moved to the new dorm, he alleges he was assaulted by three offenders. *Id*. at 11-12. Hill later met with Complex Director Sonningberg to make him aware of his situation and was moved out of the protective custody dorm. *Id*. at 12.

To the extent Hill may be asserting that Complex Director Sonningberg was responsible for the assault, he has not alleged Sonningberg was involved in moving him to the protective custody dorm where the assault took place. To be held liable under 42 U.S.C. § 1983, a defendant must have personal involvement in the alleged constitutional violation. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). Because Hill has not alleged that Complex Director Sonningberg was personally involved in Hill's move to the protective custody dorm, Hill may not proceed against him.

In late October 2022, Hill asserts Officer Eichols, Officer Kennedy, and Officer Flakes took him to Westville's internal affairs office and spread false rumors about him. ECF 8 at 19. However, spreading false rumors without more, does not amount to a constitutional violation. Hill may not proceed against these three defendants.

From December 2022 through early 2023, Hill alleges that Officer Bergonson and Officer Doughby turned on the device in his computer speakers to allow the inmate to record activities in his cell. ECF 8 at 17. Hill states Officer Doughby told him she was in love with the inmate, worked for the inmate, and the inmate convinced her to turn on the device so that false statements using Hill's voice could be created and posted on social media. *Id*. at 17, 19. He states that the inmate persuaded Captain Lewis to turn on the device. *Id*. at 19. However, Hill's allegations are "fantastic" or "delusional." *See Neitzke,* 490 U.S. at 328; *Gladney*, 302 F.3d at 774. He may not proceed against Officer Bergonson, Officer Doughby, or Captain Lewis.

Hill contends that, on March 31, 2023, Sergeant Williams assaulted him in the recreation room because he was using the phone. ECF 8 at 19-20. He states Sergeant Williams and another officer ran into the recreation room, slammed him to the floor, and punched him in the face even though Sergeant Brown told him he could contact his family during recreation time. *Id*. at 20.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved.

*McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890. Here, additional fact finding may demonstrate that the force used against Hill was not excessive, but giving him the benefit of the inferences to which he is entitled at this stage of the case, he has stated an Eighth Amendment claim of excessive force against Sergeant Williams. However, he has not stated a claim against Sergeant Brown because he has not alleged he was personally involved in the assault. *See Mitchell*, 895 F.3d at 498; *George*, 507 F.3d at 609.

In August or September 2023, Hill asserts he asked Major Cornett to transfer him to another prison, but his request was denied. ECF 8 at 25-26. "Prison officials have broad administrative and discretionary authority over the institutions they manage." *Westerfer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2021) (quotation marks, brackets, and

6

citations omitted). While prison officials must afford offenders their constitutional rights, where to house an offender is the type of decision that is squarely within the discretion of prison officials. Therefore, Hill has not stated a claim against Major Cornett.

Hill has also sued the Warden of Westville Correctional Facility and Assistant Warden Ghan. There is no general respondeat superior liability under 42 U.S.C. § 1983, and these defendants cannot be held liable for damages simply because they oversee the operations at the prison or within the IDOC. *Mitchell*, 895 F.3d at 498; *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). However, they may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Moreover, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018). Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013). Hill has not alleged facts from which it can plausibly be inferred that the Warden of Westville Correctional Facility or Assistant Warden Ghan knew about, facilitated, approved, condoned, or turned a blind eye toward any alleged unconstitutional act Hill believes occurred at Westville. Therefore, he may not proceed against the Warden of Westville Correctional Facility or Assistant Warden Ghan.

Furthermore, Hill has sued Captain Ripple. However, other than listing Captain Ripple as a defendant in the caption of his case, he never mentions him in the body of his amended complaint. Therefore, Hill may not proceed against Captain Ripple.

As a final matter, Hill has sued Westville Correctional Facility. However, the prison is a building, not a "person" or policy-making body that can be sued for constitutional violations under 42 U.S.C. § 1983. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Because Westville Correctional Facility is not a suable entity, Hill may not proceed against it.

For these reasons, the court:

(1) GRANTS Lydell Hill leave to proceed against Officer Doughby in her individual capacity for compensatory and punitive damages for starting a rumor about Hill talking to a detective about other offenders that caused him to be assaulted in late 2021, in violation of the Eighth Amendment;

(2) GRANTS Lydell Hill leave to proceed against Sergeant Williams in his individual capacity for compensatory and punitive damages for using excessive force against him on March 31, 2023, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Complex Director Sonningberg, Officer Eichols, Officer Kennedy, Officer Flakes, Officer Bergonson, Captain Lewis, Sergeant Brown, Major Cornett, Warden of Westville Correctional Facility, Assistant Warden Ghan, Captain Ripple, and Westville Correctional Facility;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Doughby and Sergeant Williams at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 8);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service, if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Doughby and Sergeant Williams to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 2, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT